UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES DENERICK NELSON, JR., <br><br> Petitioner, <br><br> v. <br><br> PATRICK COVELLO, Warden, <br><br> Respondent. | No. 2:24-cv-0758 KJM AC P <br><br><br> FINDINGS AND RECOMMENDATIONS |

Petitioner is a California state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The action proceeds on the First Amended Petition, ECF No. 7, which challenges petitioner's 2020 conviction for indecent exposure and committing a lewd and lascivious act on a child. Respondent has answered, ECF No. 19, and petitioner has filed a traverse, ECF No. 20.

## BACKGROUND

I. Proceedings in the Trial Court

   A. Preliminary Proceedings

Petitioner was charged in Sacramento County with molesting the daughter of his ex-girlfriend. The criminal complaint alleged that lewd and lascivious acts and indecent exposure were committed "[o]n or about and between January 18, 2017, and January 17, 2019[.]" 1 CT 26, 27 (ECF No. 17-1 at 27-28).

1

B.  <u>The Evidence Presented at Trial</u>[1]

The jury heard evidence of the following facts.  Petitioner dated K.D.'s mother and lived with the mother, K.D., and K.D.'s older sister.  One night, petitioner entered K.D.'s bedroom with his robe open.  The sister was sleeping at a friend's house and K.D.'s mother was sleeping in K.D.'s bedroom because K.D. was sick.  Petitioner stood over K.D.'s bed with his penis exposed.  He put his hand inside the front of K.D.'s leggings and underwear and stuck his fingers inside K.D.'s vagina.  K.D. turned over and pretended to be asleep.  Petitioner kept his fingers inside K.D. for maybe 10 minutes.  His fingers went in and out of her vagina.  K.D. was too scared to say anything.  Petitioner lived with K.D. and her family for approximately four or five months following the incident.

K.D. said the incident affected her behavior.  She was getting in trouble at school.  K.D. first told her sister what happened.  K.D. denied telling her sister in order to get out of trouble at school.

The sister said K.D.'s behavior changed and she started having emotional breakdowns.  The sister testified that she and K.D. did not feel comfortable living with petitioner.  The sister saw petitioner touching his penis by the back door.

The sister told the mother's new boyfriend about K.D.'s disclosure and the boyfriend and mother called the police.  Sacramento Police Department Officer Brandon Calderon interviewed K.D. the next morning, February 12, 2019.  K.D. reported that petitioner had entered her bedroom in a robe, re-entered her bedroom naked, sat at the side of her bed, and touched her inappropriately.  She said he inserted his fingers in her vagina.  K.D. appeared scared during the interview.  She had a difficult time giving the officer details.  She said the incident occurred about a year earlier, but she did not remember the exact date.  In response to the officer's question about the timing of her disclosure, K.D. said she was just ready to tell.  K.D. did not tell the officer she was getting in trouble at school.

K.D. participated in a SAFE interview the following week.  Sacramento Police

---

[1] This factual summary is adapted from the opinion of the California Court of Appeal, ECF No. 17-9 at 2-4.

Department Detective Konrad Von Schoech testified about K.D.'s SAFE interview statements. He said K.D. related that her mother's ex-boyfriend entered her bedroom while she was in bed and his penis was exposed through his bathrobe. He put his hand inside K.D.'s pants and digitally penetrated her vagina with his fingers.

K.D. did not remember the exact date that the incident with petitioner occurred. She told the SAFE interviewer the incident occurred maybe in May 2018, four months after she turned 11. It was stipulated that petitioner had been incarcerated at the Sacramento County Jail from March 8, 2018 to August 28, 2018. At trial, K.D. said her SAFE interview statement about when the incident occurred was a mistake because the incident happened before she turned 11. She explained it was not easy for her to remember dates. She testified the incident occurred before her mother got a restraining order against petitioner, something she had previously told law enforcement officers. K.D.'s mother got the restraining order on February 20, 2018. Detective Von Schoech testified that based on his training and experience, it was common for victims to remember what happened but not the exact date of the incident.

K.D. also testified that a couple of weeks after the incident with petitioner, she told her friend Natalia that she did not feel safe and that she was being hurt because of her mother's relationship with petitioner. K.D. testified she did not tell Natalia the details of the incident. But K.D. told law enforcement officials that she told a friend in December 2018 or January 2019 that something had happened. Natalia testified that in sixth grade, K.D. told her and another friend that her mother's boyfriend James had raped her. Detective Von Schoech testified that in his experience, young people mean different things by "rape" and rape generally means some violation of their body. Natalia testified that K.D. was crying a lot and it was unusual behavior. Natalia did not tell a grownup about K.D.'s disclosure because she did not know if K.D. was telling the truth. Natalia said K.D. lied about stuff, but based on how K.D. was acting when she made the disclosure, Natalia thought K.D. was telling the truth about the incident.

The prosecutor also presented evidence of petitioner's uncharged sexual offenses. C.W. testified that in 2016, she was out in her front yard with her seven-year-old son. She said petitioner stood across the street from her, pulled out his penis and masturbated to ejaculation

while looking at her. Petitioner was convicted of indecent exposure for the C.W. incident. In addition, Jaimee L. testified that one morning in June 2019, petitioner exposed his penis on a Light Rail train and masturbated in front of her. There were other people sitting around Jaimee L. Petitioner was convicted of indecent exposure in relation to the Jaimee L. incident. Also, Cheryl S. testified that one afternoon in March 2018, petitioner sat across from her in a church lobby open to the public, looked at her, smiled and touched his penis with his hands in his shorts pockets. No one else was in the lobby. Petitioner then lifted his shorts up and exposed his penis to Cheryl S. three times, smiling and grinning while looking at her. His penis was erect. Petitioner was convicted of indecent exposure in relation to the Cheryl S. incident.

C. Outcome

The jury convicted petitioner of one count of committing a lewd and lascivious act upon K.D. and a count of indecent exposure. The trial court sentenced petitioner to an aggregate prison term of eight years and eight months.

II. Post-Conviction Proceedings

Petitioner timely appealed, and the California Court of Appeal affirmed the judgment of conviction on August 5, 2022. ECF No. 17-9. The Court of Appeal found error in the calculation of presentence credit, however, and remanded for recalculation. Id. The California Supreme Court denied review on October 12, 2022. ECF No. 17-11. Following recalculation of presentence custody credits and amendment of the abstract of judgment by the trial court, appellate counsel filed a Wende brief.[2] ECF No. 17-12. The Court of Appeal found no grounds for relief. ECF No. 17-13.

Petitioner filed a petition for writ of habeas corpus in the Superior Court of California County on July 1, 2021, which was denied by minute order on July 17, 2021. ECF Nos. 17-14, 17-15. Petitioner next filed a habeas petition in the California Court of Appeal on September 29, 2021, which was denied without comment or citation on October 8, 2021. ECF Nos. 16, 17. On

---

[2] Under People v. Wende, 25 Cal.3d 436, 400 (1979), appointed counsel may file an appellate brief requesting the court to independently review the entire record "to determine for itself whether there were any arguable issues."

1  November 12, 2021, petitioner filed an "amended brief for writ of habeas corpus" in the

2  California Court of Appeal, which was construed as a habeas petition and summarily denied on

3  November 22, 2021. ECF Nos. 17-18, 17-19. Petitioner then filed a habeas petition in the

4  California Supreme Court, which he later withdrew. See ECF No. 17-20. A petition filed in the

5  California Supreme Court on June 2, 2022, was denied without comment or citation on

6  September 21, 2022. ECF Nos. 17-21, 17-22.

## STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The statute applies whenever the state court has denied a federal claim on its merits, whether or not the state court explained its reasons. Harrington v. Richter, 562 U.S. 86, 99 (2011). State court rejection of a federal claim will be presumed to have been on the merits absent any indication or state-law procedural principles to the contrary. Id. (citing Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100.

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). Only Supreme Court precedent may constitute "clearly established Federal law," but courts may look to circuit law "to ascertain whether…the particular point in

issue is clearly established by Supreme Court precedent." Marshall v. Rodgers, 569 U.S. 58, 64 (2013).

A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407-08. It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

Review under § 2254(d) is limited to the record that was before the state court. Cullen v. Pinholster, 563 U.S. 170, 180-181 (2011). The question at this stage is whether the state court reasonably applied clearly established federal law to the facts before it. Id. at 181-182. In other words, the focus of the § 2254(d) inquiry is "on what a state court knew and did." Id. at 182. Where the state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is confined to "the state court's actual reasoning" and "actual analysis." Frantz v. Hazey, 533 F.3d 724, 738 (9th Cir. 2008) (en banc). A different rule applies where the state court rejects claims summarily, without a reasoned opinion. In Richter, supra, the Supreme Court held that when a state court denies a claim on the merits but without a reasoned opinion, the federal habeas court must determine what arguments or theories may have supported the state court's decision, and subject those arguments or theories to § 2254(d) scrutiny. Richter, 562 U.S. at 102.

## DISCUSSION

I. Overview

The claims of the federal petition were exhausted in state habeas. The California Supreme Court denied them summarily, without written opinion, ECF No. 17-22, as had lower state courts. Accordingly, § 2254(d) bars relief unless there was no objectively reasonable basis on which the state court could have denied relief. For the reasons explained below, the undersigned finds that all of petitioner's claims are meritless and fail under any standard of review.

Each of petitioner's eleven claims for relief is predicated on a common core of fact: that

6

K.D. had stated during her SAFE interview that the incident might have occurred in May 2018, but that petitioner was incarcerated at that time. Petitioner emphasizes throughout his pleadings that he could not have molested K.D. in May 2018, and refers to his incarceration as providing an "alibi." As the evidence summarized above demonstrates, K.D.'s inability to remember the date of the incident was undisputed and was thoroughly explored at trial. Petitioner insists here that his rights were violated in various ways by the discrepancies between K.D.'s initial estimate of the date of the molestation, the broader date range specified in the charging allegations, and the evidence presented at the preliminary hearing and at trial. Detailed analysis of these claims under 28 U.S.C. § 2254(d) is unnecessary, because several of them are non-cognizable as a matter of law and others rest on a faulty implicit premise: that lack of proof as to the date an offense occurred necessarily precludes criminal liability. See Cal. Penal Code § 955 (""The precise time at which the offense was committed need not be stated in the accusatory pleading, but it may be alleged to have been committed at any time before the finding or filing thereof, except where the time is a material ingredient in the offense.").

The criminal complaint in this case, which was later deemed an information, alleged that the offenses were committed "[o]n or about and between January 18, 2017, and January 17, 2019[.]" 1 CT 26, 27 (ECF No. 17-1 at 27-28). The jury was instructed pursuant to CALCRIM No. 207 as follows: "It is alleged that the crimes occurred on or about and between various dates. The People are not required to prove that the crimes took place exactly on those days but only that they happened reasonably close to those days." 1 CT 225. (ECF No. 17-1 at 214). This language does not violate the due process right to adequate notice of the charges, which is the only putative constitutional claim even remotely suggested by the facts on which petitioner relies.[3] See Brodit v. Cambra, 350 F.3d 985, 988-89 (9th Cir. 2003) (denying due process claim that petitioner was deprived of notice and opportunity to respond when information charged only range of dates during which sexual abuse occurred but did not allege specific date). In this case,

////

---

[3] Petitioner does not present and did not exhaust a claim of inadequate notice.

the exact date of the offense conduct within the specified range was not material to the charges.[4] The primary question for the jury was whether K.D. was telling the truth about the alleged molestation, and the defense had a full and fair opportunity to cross-examine her and to test her credibility, including by challenging the fallibility of her memory as to dates.

With these observations in mind, the court turns to the claims of the petition.

## II.     Claim One: Invalid Arrest Warrant

Petitioner alleges that the warrant for his arrest was constitutionally defective because it identified the sexual assault as occurring on the date initially reported by the victim, even though he was in custody on that date and therefore could not have committed the offense. ECF No. 7 at 5-6. Petitioner frames the issue as a denial of due process and equal protection by Detective Konrad Von Schoech. Petitioner contents that Detective Von Schoech's failure to include the "alibi" information in the probable cause statement violated Brady v. Maryland. Id.

These allegations do not provide a basis for relief. The constitutionality of a warrant is governed by the Fourth Amendment, see Franks v. Delaware, 438 U.S. 154 (1978), and Fourth Amendment claims are not cognizable in federal habeas. Stone v. Powell, 428 U.S. 465, 482 (1976). Under Stone, Fourth Amendment claims are reviewable in federal habeas only where a state fails to provide a forum for litigation of the issue. Id. The Ninth Circuit has held that California's statutory framework for litigating suppression issues satisfies Stone's requirement of a full and fair opportunity to raise Fourth Amendment claims. Gordon v. Duran, 895 F.2d 610, 613-14 (9th Cir. 1990). Accordingly, federal habeas relief would be unavailable to petitioner even if the arrest warrant was defective. See Myers v. Rhay, 577 F2d 504, 508 (9th Cir. 1978) (even assuming that an arrest is invalid due to an unconstitutionally issued arrest warrant, Stone bars relief); see also Terrovona v. Kincheloe, 912 F. 2d. 1176, 1178 (9th Cir. 1990) (Stone bars federal review of a state prisoner's warrantless arrest claim).

Brady v. Maryland, 373 U.S. 83 (1963), on which petitioner relies, does not apply to the facts he presents. Brady requires prosecutors to disclose exculpatory evidence to criminal

---

[4] This was not a case in which, for example, the date would have made a difference as to the minority of the child victim.

defendants for use at trial. Because the U.S. Supreme Court has never held that Brady applies to police officers' applications for arrest warrants, relief would be barred by 28 U.S.C. § 2254(d) even if Stone did not independently bar the claim. See Wright v. Van Patten, 552 U.S. 120, 125-26 (2008) (per curiam) (if no Supreme Court precedent announces the rule on which petitioner relies, the state court's denial of relief cannot be contrary to, or an unreasonable application of, clearly established federal law and habeas relief is barred).

### III.     Claim Two: Fabricated Facts in Criminal Complaint

Petitioner alleges that the criminal complaint filed against him on September 24, 2019, stated the offenses occurred "on or about and between" January 18, 2017 and January 17, 2019, even though Detective Von Schoech's report provided an offense date of May 2018. Petitioner characterizes this discrepancy as involving a fabrication of charging facts by the prosecutor, in violation of his due process rights. ECF No. 7 at 7-10.

There is no legal authority for the proposition that a charging document is limited to the facts as initially reported to law enforcement, which may not be supplemented or corrected based on further investigation. There is also no factual basis for petitioner's conclusory allegations of falsified evidence and forgery. And petitioner has identified no clearly established federal constitutional right which could have been violated by a charging document alleging an offense date range that conformed to the prosecutor's determination of what the evidence showed. For all these reasons, the state habeas court's unexplained denial of relief on this claim cannot have involved any unreasonable application of clearly established federal law.

### IV.     Claims Three and Four:  False Evidence at Preliminary Hearing

Claim Four alleges that Detective Von Schoech testified falsely at the preliminary hearing regarding the date of the alleged molestation, and Claim Three alleges that the prosecutor failed to correct the false testimony. ECF No. 7 at 11-14, 16-18. These claims are factually frivolous. K.D.'s inaccurate initial estimate of the incident's date was no secret, and did not legally preclude either the probable cause determination or the eventual jury verdict. Moreover, the detective's testimony was not evidence of when the molestation happened, it was evidence of what K.D. had

////

reported. Even if she had been wrong about details, that would not render the witness's testimony false.

More fundamentally, errors at a preliminary hearing cannot support federal habeas relief because they do not affect the constitutionality of the conviction. At most, defects at a preliminary hearing affect the validity of the probable cause determination. A probable cause determination, however, is not a constitutional prerequisite to a charging decision. Gerstein v. Pugh, 420 U.S. 103, 125 n.26 (1975); see also Howard v. Cupp, 747 F.2d 510, 510 (9th Cir. 1984) (well settled that there is no fundamental right to a preliminary hearing), cert. denied, 471 U.S. 1021 (1985). Accordingly, a conviction will not be vacated on the ground that the probable cause determination was faulty. See Viltz v. McEwen, 2013 U.S. Dist. LEXIS 153714 at *38-39 (S.D. Cal. 2013) (collecting cases). Issues pertaining to the sufficiency, credibility, and admissibility of testimony at a preliminary hearing simply provide no basis for habeas relief, even without reference to AEDPA standards. See Gilmore v. California, 364 F.2d 916, 918 n. 5 (9th Cir. 1966). In short, once a jury returns a guilty verdict, the validity of the conviction turns on the constitutionality of the trial—any errors at the preliminary hearing are moot. Claims Three and Four thus provide no cognizable grounds for relief.

V.   Claims Five and Eight: Ineffective Assistance of Trial Counsel

   A.   Petitioner's Allegations and Pertinent State Court Record

Petitioner alleges in Claim Five that defense counsel rendered ineffective assistance at the preliminary hearing by, among other things, failing to investigate and present an alibi defense and failing to challenge Detective Von Schoech's "false testimony" regarding the date of the alleged offense. Counsel was also ineffective in failing to challenge the defective arrest warrant. ECF No. 7 at 20-23. In Claim Eight, petitioner alleges that counsel incompetently stipulated to petitioner's incarceration in May 2018 rather than seeking dismissal of the case on that basis, failed to seek dismissal or a mistrial on grounds of prosecutorial misconduct, and failed to challenge invalid warrants and illegally seized evidence. Id. at 34-35.

To establish a constitutional violation based on ineffective assistance of counsel, a petitioner must show (1) that counsel's representation fell below an objective standard of

reasonableness, and (2) that counsel's deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 692, 694 (1984). Prejudice means that the error actually had an adverse effect on the defense. There must be a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id. at 693-94. The court need not address both prongs of the Strickland test if the petitioner's showing is insufficient as to one prong. Id. at 697.

Allegations of ineffective assistance at a preliminary hearing can support relief on a Strickland claim only if counsel's errors had a prejudicial impact on the outcome of the trial. See Davidson v. Davey, Case No. 2:16-cv-00689 GEB GGH P, 2017 WL 2972516 at *3, 2017 U.S. Dist. LEXIS 108189 at *8-9 (E.D. Cal. Jul. 12, 2017) (citing Rose v. Mitchell, 443 U.S. 545, 576 (1979) (Stewart J., concurring)); Peyton v. Diaz, Case No. CV 19-9249 VAP KK, 2020 WL 4721832 at *13, n.19, 2020 U.S. Dist. LEXIS 146147 at *29, n.19 (C.D. Cal. May 22, 2020). None of the alleged errors and omissions of counsel identified in the petition, whether related to the preliminary hearing or the trial, can have had any effect on the verdict.

For all the reasons previously explained, the charges against petitioner were not improper just because petitioner was incarcerated at the time that the victim initially suggested the molestation might have taken place. The precise date of the molestation was not an essential element of the offenses. Moreover, petitioner's incarceration during May 2018 did not provide an alibi. An alibi defense is available when a criminal offense has indisputably occurred, its precise date is known, and the question for the jury is whether the defendant could have been the perpetrator. For example, if it was undisputed that a store had been robbed by masked intruders on May 15, 2018, petitioner could not have been the robber because he was in custody at the time. His incarceration would provide an alibi under those circumstances. But the question in this case was not whether petitioner was the perpetrator, it was whether K.D. had been molested by him. Counsel cannot have performed unreasonably by failing to present a nonexistent "alibi" defense.

All the alleged instances of ineffective assistance are rooted in petitioner's theory that his incarceration in May 2018 should have prevented his conviction. That theory has no legal basis, and counsel does not perform deficiently by failing to take futile acts. Rupe v. Wood, 93 F.3d

11

1434, 1445 (9th Cir. 1996). Moreover, none of counsel's alleged acts or omissions can possibly have affected the verdict. The jury was fully aware that K.D. had initially said the incident might have occurred in May 2018, and that it cannot have occurred then because petitioner was in jail. The question was whether the molestation had occurred *at all* within the charged date range. There was no legal basis for dismissal of the charges or for mistrial. Accordingly, petitioner's ineffective assistance of counsel allegations fail to establish a prima facie claim under Strickland.

      VI.      Claims Six, Seven and Nine: Prosecutorial Misconduct

Claim Six alleges that the prosecutor submitted false statements of fact in her trial brief and motions in limine. Specifically, petitioner alleges that the prosecutor's filings recited false statements that had been made by the victim. This was fraud on the court because the prosecutor knew or should have known that petitioner was incarcerated in May 2018. ECF No. 7 at 26-27. Claim Seven alleges that the prosecutor violated petitioner's rights by presenting the false testimony of the victim. K.D.'s trial testimony was inconsistent with her initial interview as to the date of the alleged molestation, demonstrating her perjury. Id. at 29-32. Claim Nine alleges that the prosecutor stipulated to petitioner's incarceration in May 2018 in violation of his constitutional rights, suppressed favorable evidence, presented false evidence, and included false facts in filings with the court, all in relation to the issue of the date of the alleged molestation. Id. at 37-39.

A conviction violates due process if it is obtained through testimony or evidence the prosecutor knew or should have known was false. Napue v. Illinois, 360 U.S. 264, 269-70 (1959). Petitioner has made no showing that K.D. presented actually false testimony, let alone false testimony that was material to the verdict and that the prosecutor knew to be false. See Hayes v. Brown, 399 F.3d 972, 984 (9th Cir. 2005) (en banc) (reciting elements of Napue claim). To the contrary, K.D.'s confusion about dates and the inaccuracy of her initial report as to the date of the incident was fully explored before the jury.

None of petitioner's other allegations implicate the fundamental fairness of his trial, which is the touchstone of due process. See Smith v. Phillips, 455 U.S. 209, 219 (1982); see also Greer v. Miller, 483 U.S. 756, 765 (1987) (to violate due process, "prosecutorial misconduct must be of

sufficient significance to result in the denial of the defendant's right to a fair trial."). Because the discrepancy regarding dates was not material, none of the prosecutor's identified acts and omissions can have affected the fairness of petitioner's trial.

VII.  Claim Ten: Unlawful Sentence

Petitioner alleges that his sentence is unlawful because the court "lacked fundamental jurisdiction to even consider the case." ECF No. 7 at 40. The lack of jurisdiction allegedly follows from the previously alleged instances of prosecutorial misconduct, ineffective assistance of counsel, and other deprivations of petitioner's substantial rights. Id. at 40-41. These allegations do not implicate the Eighth Amendment's substantive limitations on sentencing, so petitioner has not stated a cognizable constitutional claim. Neither do petitioner's allegations go to the jurisdiction of the superior court. Because the alleged errors at trial did not violate petitioner's rights for the reasons already explained, his conviction was valid and the court was entitled to impose sentence.

VIII. Claim Eleven: Ineffective Assistance of Appellate Counsel

Petitioner alleges that appellate counsel rendered ineffective assistance by failing to raise various of the issues presented in the habeas petition. ECF No. 7 at 42-45. To establish ineffective assistance in the appellate context, a petitioner must show a reasonable probability that he would have prevailed on appeal absent counsel's alleged errors. Smith v. Robbins, 528 U.S. 259, 285-286 (2000). Because petitioner's claims are all meritless for the reasons explained above, this claim also fails.

CONCLUSION

For all the reasons explained above, the state courts' denial of petitioner's claims was not objectively unreasonable within the meaning of 28 U.S.C. § 2254(d). Even without reference to AEDPA standards, petitioner has not established any violation of his constitutional rights. Accordingly, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. §636(b)(l). Within twenty-one days

after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. See 28 U.S.C. § 2253(c)(2). Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: December 20, 2024

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE